7    35
30   133

## SOCIETE des MINES D'ARGENT et FONDERIES de BINGHAM, Appellant, *v.* RICHARD MACKINTOSH, Respondent.

Promissory Note.— Accommodation Paper.— Payee.—Where respondent with knowledge of M's agency as commercial director of appellant, executed a promissory note to M. as commercial director, but as a personal accommodation not to be negotiated, and at same time M. gave to respondent his personal note for same amount in order to protect respondent, and note was never used but remained in appellant company's safe for several years, where it was found by an agent of the appellant, but note had never been used to in anyway defraud or injure appellant; *held*, that M. was payee of the note and the words commercial director were simply descriptive. Henderson, J. dissenting.

Appeal.—Second Appeal.—Former Decision.—When upon a second appeal the evidence upon a former appeal is not in the record, and the court had no means of knowing whether it was the same or not, and the evidence upon the two appeals differs in material particulars, so far as the evidence on the first appeal is shown by the opinions, the first decision is not binding upon the court on a second appeal.

Appeal from a judgment of the district court of the third district and from an order refusing a new trial. The opinion states the facts. For the former opinion see *Societe des Mines* v. *Mackintosh*, 5 Utah 568.

*Messrs. Marshall and Royle*, for the appellant.

*Messrs. Bennett, Marshall and Bradley* and *Mr. Robert Harkness*, for the respondent.

Blackburn, J.:

This suit was brought December 23, 1884; tried before

the court December 30, 1886, and judgment rendered for
defendant; appeal had to supreme court, and on May 2,
1888, judgment was reversed.   On January 23, 1890, the
cause was retried by the court, jury being waived, and
judgment again rendered for defendant, and a motion
was made for a new trial, and the motion was overruled.
From the overruling of the motion for a new trial, and
the judgment, this appeal is taken.    The complaint
alleges that the plaintiff, a foreign corporation, did busi-
ness in mining in this country in the name of "F. Med-
hurst, Commercial Director." That the defendant well
knew that was the name in which the company did busi-
ness.   That the defendant, at the city of Salt Lake, on
the 3d day of February, 1882, under the name of "R.
Mackintosh," executed and delivered to plaintiff, under
the name and style of "F. Medhurst, Commercial
Director," his promissory note as follows: "3 February,
1882, Salt Lake City.   Six months after date, for value
received, I promise to pay to F. Medhurst, Commercial
Director, or order, the sum of seven thousand dollars
($7,000) together with interest at the rate of ten (10)
per cent. per annum.   R. MACKINTOSH." That said note
has not been paid, nor any part thereof.   The respond-
ent answered denying specifically the allegations of the
complaint, and for a further answer set up affirmatively
that said note was given to Medhurst alone, for his own
use, and not given to plaintiff; that it was an accommo-
dation note, for which he got no consideration; that it
was given to Medhurst for his sole and private use; that
the plaintiff had no interest in the note whatever, and
paid no consideration for it.   The defendant also pleaded
a counter-claim, as follows: That the said Medhurst, at
the time the note sued upon was given, gave him, as an
offset to that note, a note for like amount, with like
interest, payable at the same time, and signed it "F.

MEDHURST, Com.," which was to protect him if anything should happen Medhurst, and that the whole transaction was a private one between him and Medhurst, in which the plaintiff had no interest.   The record shows the facts substantially as follows:

The appellant was a foreign corporation doing a large mining business in Utah.  F. Medhurst was its financial agent.  It kept its bank-account in the name of F. Medhurst, Commercial Director.  The business at the mine was under the management of one Cohen, and at the mine the business was carried on in the name of the appellant, and its vouchers and all its papers were in its name.  The respondent carried on an ore-sampling business, and sampled the ores of the appellant for several years; sampled a large amount of ores, and was paid by checks on the banks signed "F. MEDHURST, Commercial Director," or an abbreviation thereof.  Medhurst used the funds of the company to a large amount, and on February 3, 1882, Medhurst went to respondent, and on certain representations, of an indefinite character, induced him to sign the note sued upon, payable to F. Medhurst, Commercial Director, with the distinct understanding that it was for Medhurst's personal use, and was not to be negotiated.  This note was put in an envelope, and handed to one Fox, the book-keeper of the company, with the direction by Medhurst that it was to be put into the safe where the company's papers and the private papers of Medhurst were kept, and was not to be negotiated.  The appellant did not know of the note until about two years afterwards, and after Medhurst had left the country.  Then it found the note in an envelope, as it was at the time it was put into the safe; and on December 23, 1884, brought this suit upon it.  At the time the note was given Medhurst gave to the respondent a note for a like amount, with like interest,

signed "F. MEDHURST, Com.," remarking, this would protect him if anything would happen, and also gave him the following statement:

"3rd *Feb.*, 1882.

"SALT LAKE CITY, UTAH.

"*My Dear Mackintosh:*

"The object of the present is to state that you have this day given me, as a personal obligation to myself, your note of $7,000, payable in six months, with interest at the rate of ten per cent. per annum, and not for value received; said note being given in exchange for one of mine, of like amount, time, and interest, and I hereby pledge myself not to discount or in any way make use of your said note, and thank you for the favor conferred.

"F. MEDHURST."

The note given to Medhurst was not indorsed when the appellant found it in the safe. At the time respondent gave the note sued upon, Medhurst gave to respondent a check as follows:

"No. 2,776.     SALT LAKE CITY, UTAH,

"*Feb.* 4th, 1882.

"*McCornick & Co., Bankers, Salt Lake City, Utah:*

"Pay to the order of Richard Mackintosh fifteen hundred dollars ($1,500).

"F. MEDHURST, *Com. Dir.*"

—Which was indorsed by respondent, and Medhurst got the money upon it. This check was given without explanation by Medhurst, and was indorsed by respondent, without any explanation asked for. Before that time, the following check was made and used by Medhurst:

"No. 2,772.     *Feb.* 1st, 1882.

"*McCornick & Co., Bankers, Salt Lake City, Utah:*

"Pay to the order of F. Medhurst seventeen hundred dollars ($1,700).     F. MEDHURST, *Com. Dir.*"

—Which was indorsed by Medhurst, and used by him, but respondent knew nothing of this check at the time he gave the note sued upon, nor until after this suit was brought. On February 4, 1882, Medhurst caused the book-keeper to enter upon the books of the appellant the following:

Bills receivable, loans to Mackintosh, etc.

| | |
|---|---|
| Dr.   To cash ............................. $7,000 | |
| Represented by credit to M................... | $3,800 |
| Check of Feb. 1st........................... | 1,700 |
| Check of Feb. 4th........................... | 1,500 |
| | $7,000 |

—Of which entry respondent knew nothing until shown in court. In October, 1881, F. Medhurst, being short in his account to the appellant, drew a check on the company in favor of respondent for $4,500, which respondent indorsed and handed back to Medhurst, and he caused Fox, his book-keeper, to enter it on the books of the company as a *bona fide* loan to respondent, but respondent knew nothing of the use Medhurst made of the check, nor was anything said, at the time he indorsed it, of the use Medhurst intended to make of it. The findings of fact by the court were substantially as stated above, and as a conclusion of law the court says: "I find the defendant did not make or deliver the note to the plaintiff; that the plaintiff take nothing by its action; and that defendant is entitled to judgment for costs of suit, and judgment accordingly is entered." We think the findings of the court are fully sustained by the evidence; and as they have the force and effect of the verdict of a jury in a suit at law, when the case is tried by the court, as this case was, the evidence in the record will not justify us in setting them aside.

We do not see what the check for $4,500 has to do with this case, or the check of $1,700. They are not

sued upon or mentioned in the pleadings, and the evidence does not show that they in any way entered into the consideration of the note sued upon, or had any connection with it; and the $4,500 check was indorsed a long time before the note was given. Where a note is made to one party, and delivered to another party as the real payee of the note, the real payee may sue in his own name upon the note, and allege it was made to him in the name of the party mentioned in the note, and parol proof is admissible to prove the allegation, and if it is proved he can recover. But the parol proof in this case shows beyond question that this note was not made to the appellant, but was made to Medhurst, as his personal note, and was made without consideration, as an accommodation to him, and not to be used. But it is contended that this note was used by Medhurst to defraud the appellant company, and if the respondent negligently or fraudulently, by giving this note to Medhurst, put it in his power to defraud the appellant, and thereby he did defraud the appellant, he is liable for whatever damage the appellant suffered. This is doubtless true as a legal proposition, but to recover in that case would it not be necessary to plead the negligence or fraud, and prove at the trial the damage done? We think it would. This is a suit on the note alone, alleging that this note is the note of the appellant, and made and delivered to it under the name of "F. Medhurst, Commercial Director," and for value. There is no evidence in the record to show that the appellant was cheated or defrauded by this note, or that it paid any consideration whatever for it. Whatever defrauding was done by Medhurst was not in any way aided or induced by this note. What he did was done while he was the trusted agent of the appellant, and had full control of its funds. The appellant did not see or know of the note until a year

and more after it was given, and until long after Medhurst had completed his pilfering from the appellant company, and it clearly appears by undisputed testimony that he was not assisted in his crookedness by this note. We think, therefore, this judgment ought to be affirmed, unless we are bound by a former decision made in this case by this court.

It is contended by appellant that the decision heretofore made by this court settles this case in favor of appellant, and therefore this judgment ought to be reversed. The rule in such cases is well stated in the case of *Elston* v. *Kennicott,* 52 Ill. 274, cited by appellant, as follows: "The former decision of this court is urged as conclusive of the questions then presented, and of the case as disclosed by this record. So far as questions were there determined, that is true, but it is not as to new questions and new facts. The very object of remanding a case for a new trial is to enable the parties to introduce any further legitimate evidence. It is the purpose of the law to administer justice and afford protection to parties in their legal rights, and not to prevent its attainment by mere technical rules. When a case has been determined in an appellate court, and remanded for further proceedings, and on a new trial further and material evidence is introduced, it becomes a new case in so far as to require the additional evidence to be considered in connection with the evidence previously before the court, and decided upon all the evidence then heard." In the trial of the cause now before us, the evidence upon which the case was tried that was formerly decided by this court was not put in evidence, and the trial court had no means of knowing whether the evidence in the former trial was the same as that produced in the new trial, and therefore he could only decide the case on the evidence before him; so this court cannot consider the evidence intro-

duced in the first trial of this case, for it is not in the record, and this court can go no further in comparing the evidence given at this trial with the evidence at the first trial than so far as that evidence is given in the opinions rendered by the court in its decision on this case when formerly before it. Each of the three judges rendered a separate opinion, and from the statement of facts in those opinions the facts in the first trial were much the same as in the second trial. Two of the judges concur in reversing the case, and one dissents. The two judges who concur agree that the note was given to the plaintiff, and was given for value.

Judge BOREMAN, who rendered the main opinion, does not state how much value was given by the company for the note, and Judge HENDERSON, in his separate opinion, limits the value to the $1,500 check, and of course the recovery would be limited to that. But neither of the concurring judges passed upon the question as to the extent the appellant was damaged by the giving of this note, nor as to whether the damage, if any, occurred before or afterwards; nor is there any statement of facts as to whether Medhurst was indebted to the company at the time this suit was brought. If there was evidence at the first trial on that question, nothing is said about it in any of the three opinions. It is fair to presume there was such evidence. But in the trial from which this appeal is taken there is no such evidence. All there is on that subject is Fox's statement, and what the company's books show, on the date of February 4, 1882, one day after the giving of the note. Fox's statement is confined as to what the books of the appellant showed at the date of February 4, 1882. True, he says Medhurst left the country, but he does not say when, nor does he say one word about the condition of Medhurst's obligations to the company when he left the country, or what amount.

he owed the company at the time he left, if anything. Can it be said that the appellant can recover so large a sum as claimed, or any sum, from respondent, to make good the overdrafts of Medhurst, on such indefinite and uncertain testimony as this record shows? Considering all this, and conceding that the two questions, namely, that the note sued upon was given to the appellant, and that it was given for value, are settled by the former decision of this court, we think there was not such an adjudication in the opinions of this court when this case was formerly before it as concludes us in considering this case. The note was given February 3, 1882. This suit was brought December, 1884, nearly three years afterwards. The testimony shows that Medhurst continued in the service of the appellant nearly all that time, and that the appellant did not have this note in its possession, or know of its existence, or do anything about the examination of Medhurst's account with it. It appears also from the evidence that the last examination of Medhurst's account would have detected his crookedness. If the respondent was liable to the extent of this note for the overdrafts of Medhurst, can it be said that the appellant was not negligent in allowing this matter to run so long without examination,—so negligent as to relieve the respondent from liability? When a person is liable to a third party for the good conduct of the agent of such third party, it is the duty of the third party to watch the conduct of the agent, and notify the person responsible for his faithful service of any failures promptly. If the respondent was negligent in so foolishly signing the note and giving it to Medhurst, the appellant was still more negligent in not examining the accounts of Medhurst, and giving the respondent notice of their condition before he left the country, so that the respondent could secure himself while Medhurst was still in reach.

There is no error in the record in the trial of this case of which the appellant can complain. It had a fair and impartial trial, and the evidence in the case, as we think, sustains the findings of fact and the judgment. Therefore the judgment must be affirmed.

ZANE, C. J., concurred.

HENDERSON, J., dissented.